IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM F. LUNDER, | ) | Docket No. 04-278E |
| | ) | (Judge Maurice B. Cohill, Jr.) |
| Plaintiff | ) | |
| | ) | ELECTRONICALLY FILED PLEADING |
| vs. | ) | |
| | ) | |
| MOTION CONTROL INDUSTRIES, | ) | CONCISE STATEMENT OF MATERIAL |
| DIVISION OF CARLISLE | ) | FACTS IN SUPPORT OF DEFENDANTS' |
| CORPORATION, RETIREMENT PLAN | ) | MOTION FOR SUMMARY JUDGMENT |
| FOR BARGAINING UNIT EMPLOYEES | ) | |
| OF MOTION CONTROL INDUSTRIES, | ) | Filed on behalf of:  Defendants |
| DIVISION OF CARLISLE | ) | |
| CORPORATION, | ) | Counsel of record for this party: |
| | ) | Richard A. Lanzillo, Esq. |
| Defendants | ) | Knox McLaughlin Gornall |
| | ) | & Sennett, P.C. |
| | ) | 120 West 10th Street |
| | ) | Erie, PA 16501 |
| | ) | Telephone (814) 459-2800 |
| | ) | Facsimile (814) 453-4530 |
| | ) | Email rlanzillo@kmgslaw.com |
| | ) | PA53811 |
| | ) | |

**CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

A.    **Background**

1.      Defendant Motion Control Industries ("Motion Control") employed

plaintiff, William F. Lunder ("Lunder"), at its manufacturing facility in Ridgway, Pennsylvania,

from July 27, 1968 until January 11, 2002, when Motion Control closed the Ridgway facility and

permanently laid off its employees.  (Complaint ¶¶9, 12; Answer ¶¶3, 9, 12).

2.      Although Lunder's employment ceased on January 11, 2002, Motion

Control continued his wages and benefits as well as those of the other eligible employees of the

Ridgway facility through March 16, 2002.  (Complaint ¶12; Answer ¶12).

3.      As of the closure of the Ridgway facility, Lunder remained an active employee of Motion Control.  (Complaint ¶12; Answer ¶12).

4.      According to his Complaint, Lunder applied for Social Security Disability Benefits after the closure of the Ridgway facility and, more than eighteen (18) months later, on May 27, 2003, the Social Security Administration determined that Lunder was totally and permanently disabled, and therefore, entitled to Social Security Disability insurance benefits retroactive to March 31, 2003.  (Complaint ¶¶15-16).

5.      Thus, Lunder's own Complaint acknowledges that the determination of his eligibility for Social Security benefits and the effective date of those benefits did not occur until well in excess of a year after the closure of the plant and the termination of his employment.

6.      Thereafter, Lunder applied for Disability Retirement benefits under the Plan.  By letter dated August 7, 2003, the Division Human Resources Manager for Motion Control notified Lunder in writing that he was not eligible for Disability Retirement benefits.  (See Exhibit D to Motion for Summary Judgment).

7.      This denial was based on §4.3(a) of the Plan, which expressly provides that Disability Retirement benefits are only available to a Participant whose "employment…terminates…because of a Disability…"

8.      Lunder did not invoke the administrative process available under the Plan to have the denial of his claim reviewed by the Carlisle Corporation Pension and Insurance Committee.  Instead, Lunder elected to file this action.

B.      **The Plan Documents**

9.      The Plan is comprised of two documents.  Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as

amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[1] The

"Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the

"Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion

Control "Participating Group."  The Carlisle Plan Document and the Supplement are attached to

Defendants' Motion for Summary Judgment, respectively, as Exhibit A and Exhibit B.  (See

Exhibit A, pp. 2-3, §1.3 and Exhibit B, p.2, ¶(u), which describe the constituent parts of the

Plan).

        10.     The Carlisle Plan Document governs various pension plans established by

Carlisle Corporation and certain affiliates, including Motion Control.  (Exhibit A, p.1, §1.1).

The Part II Supplement describes "the benefits for Members who are in the employment of

[Motion Control] in the Participating Group on and after July 20, 2000 and who retire or whose

Vesting Service terminates on or after July 20, 2000."

**C.**       **Eligibility for Disability Retirement Benefits**

        11.     The Plan provides for four (4) types of retirement benefits: (1) Normal

Retirement Benefits (Exhibit A, §4.1); (2) Early Retirement Benefits (Exhibit A, §4.2);

(3) Disability Retirement Benefits (Exhibit A, §4.3); and (4) Deferred Vested Retirement

Benefits (Exhibit A, §4.4).

        12.     Normal Retirement benefits are generally available when the participant's

Vesting Service terminates on or after the participant reaches age 65.  (Exhibit B, p.3, ¶(j)(1)).

Early Retirement benefits are generally available to a participant who has five or more years of

Vesting Service and attains age fifty (50).  (Exhibit B, p.3, ¶(j)(2)).  Deferred Vested Retirement

---

[1]      Motion Control was operated as a division of Carlisle Corporation.

Benefits are generally available to a participant whose Vesting Services terminates after he

attains his Vested Retirement Age and before he reaches age 65.  (Exhibit A, p.18, §4.4 (a)).

13.    Basic eligibility requirements for Disability Retirement Benefits are

described in §4.3(a) of the Carlisle Plan Document.  This provision states:

> **Eligibility**.  If the employment of a Participant, but
> not an Inactive Participant, *terminates* (prior to
> retirement under section 4.1, 4.2 or 4.4) *because of
> a Disability* after he attains his Disability
> Retirement Age, he shall be eligible to receive a
> disability retirement benefit under the Plan in
> accordance with and subject to the provisions of the
> Plan.

(Exhibit A, p.17, §4.3(a)(emphasis supplied)).

14.    The Plan defines the term "Disability" as "total and permanent disability,

which is a medically determinable physical or mental impairment of a Participant resulting from

a bodily injury, disease, or mental disorder which renders him incapable of engaging in any

substantial gainful activity and which can be expected to result in death or to last at least 12

months; provided, however, that the Participant must be eligible for and actually receiving

disability benefits under the Social Security Act for the period of time from his date of disability,

after the waiting period required under the Social Security Act, until his Normal Retirement

Age."  (Exhibit A, p.5, §2.1(m)).

### D.    Plan Provisions Describing the Discretion and Authority of the Benefits Committee

15.    The Plan vests discretion regarding interpretation of the Plan in a

Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is

comprised of five members selected in accordance with procedures prescribed by the Plan.

(Exhibit A, p.32, §§7.1-7.2).

16.     The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…".  (Exhibit A, p.32, §7.3).

17.     The powers and duties of the Committee include "the *exclusive right, in its discretion*, to make *any finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan* or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision."  (Exhibit A, p.32, §7.3)(d), (e)(emphasis supplied)).

18.     In the event of a denial of a claim for benefits, the Plan provides a right of administrative review by the Committee.  (Exhibit A, p.37, §7.9(c)).  If a claimant files a written request for review of a denied claim, the Plan provides that the Committee shall review the claim within forth-five (45) days after the Committee's receipt of the request for review unless the Committee determines that special circumstances require an extension of time, in which case, this period may be extended for up to an additional forth-five (45) days.  (Exhibit A, pp.37-38, §7.9(c)).

19.     Lunder did not request administrative review of the denial of his claim prior to filing this action in the United States District Court for the Western District of Pennsylvania.

-6-

Respectfully submitted,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.


DATE:  March 30, 2006                    By: Richard A. Lanzillo /s/___
                                              Richard A. Lanzillo
                                              PA53811
                                              120 West Tenth Street
                                              Erie, PA  16501-1461
                                              Telephone: (814) 459-2800
                                              Fax: (814) 453-4530
                                              Email:  rlanzill@kmgslaw.com

                                              Attorneys for Defendants, Motion
                                              Control Industries, Division of
                                              Carlisle Corporation, Retirement
                                              Plan for Bargaining Unit Employees
                                              of Motion Control Industries,
                                              Division of Carlisle Corporation

# 664427