IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM F. LUNDER, | ) Docket No. 04-278E |
| | ) (Judge Maurice B. Cohill, Jr.) |
| Plaintiff | ) |
| | ) ELECTRONICALLY FILED PLEADING |
| vs. | ) |
| | ) |
| MOTION CONTROL INDUSTRIES, | ) MEMORANDUM IN SUPPORT OF |
| DIVISION OF CARLISLE | ) DEFENDANTS' MOTION FOR SUMMARY |
| CORPORATION, RETIREMENT PLAN | ) JUDGMENT |
| FOR BARGAINING UNIT EMPLOYEES | ) |
| OF MOTION CONTROL INDUSTRIES, | ) Filed on behalf of: Defendants |
| DIVISION OF CARLISLE | ) |
| CORPORATION, | ) Counsel of record for this party: |
| | ) Richard A. Lanzillo, Esq. |
| Defendants | ) Knox McLaughlin Gornall |
| | ) & Sennett, P.C. |
| | ) 120 West 10th Street |
| | ) Erie, PA 16501 |
| | ) Telephone (814) 459-2800 |
| | ) Facsimile (814) 453-4530 |
| | ) Email rlanzillo@kmgslaw.com |
| | ) PA53811 |
| | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff, William F. Lunder ("Lunder"), is a former employee of defendant Motion Control Industries ("Motion Control"). Lunder's employment terminated on January 11, 2002, when Motion Control closed its facility in Ridgway, Pennsylvania, and permanently laid-off all of its employees, including Lunder.[1] Prior to the termination of his employment,

---

[1] Although their employment terminated on January 11, 2002, Motion Control continued to pay the wages and benefits of Lunder and the other terminated hourly employees through March 16, 2002.

Lunder was a participant in an employer-sponsored retirement plan known as the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan").

After Motion Control terminated Lunder's employment, he and several other former employees submitted claims for "Disability Retirement" benefits under the Plan. Thereafter, Motion Control notified Lunder in writing that he was not eligible for Disability Retirement benefits. The Plan expressly provides that such benefits are available only where the participant's employment with Motion Control "*terminates…because of a Disability*." Lunder's employment terminated because of the closure of the Ridgway facility, rather than any alleged disability, which rendered him ineligible for Disability Retirement benefits.

Under the Plan, Lunder had the right to take an administrative appeal from the denial of his claim. The Plan vests the "exclusive right and discretionary authority" to hear and determine appeals from denials of claims and matters of Plan interpretation in a pension and benefits Committee. Lunder opted not to file an administrative appeal from the denial of his claim, and instead chose to commence this action. Defendants filed an Answer to Lunder's Complaint and, as their first Affirmative Defense, raised Lunder's failure to exhaust his administrative and contractual remedies under the Plan. (Answer, Affirmative Defense #1). Defendants also denied Lunder's entitlement to Disability Retirement benefits based upon the clear and unambiguous terms of the Plan Documents.

Defendants now move for summary judgment on two grounds. First, Lunder's undisputed failure to exhaust his administrative remedies precludes this action and deprives the Court of subject matter jurisdiction to hear Lunder's claim. Second, even if the Court were to reach the merits of the case, the clear and unambiguous terms of the Plan render Lunder ineligible to receive Disability Retirement benefits.

## II.     MATERIAL FACTS

### a.     Background

Motion Control employed Lunder at its manufacturing facility in Ridgway, Pennsylvania, from July 27, 1968 until January 11, 2002, when it closed the Ridgway facility and permanently laid off its employees. (Complaint ¶¶9, 12; Answer ¶¶3, 9, 12). Although Lunder's employment ceased on January 11, 2002, Motion Control continued his wages and benefits as well as those of the other eligible employees of the Ridgway facility through March 16, 2002. (Complaint ¶12; Answer ¶12).

Although Lunder's Complaint alleges that he suffered a disabling injury on March 5, *1990*, as of the closure of the Ridgway facility, Lunder remained an active employee of Motion Control. (Complaint ¶12; Answer ¶12). According to his Complaint, Lunder applied for Social Security Disability Benefits after the closure of the Ridgway facility. Lunder's Complaint alleges that, by decision dated May 27, 2003, the Social Security Administration determined that Lunder was totally and permanently disabled, and therefore, entitled to Social Security Disability insurance benefits retroactive to March 31, 2003. (Complaint ¶¶15-16). Thus, according to Lunder's own Complaint, the determination of his eligibility for Social Security benefits and the effective date of those benefits did not occur until well in excess of a year after the closure of the plant and the termination of his employment.

Thereafter, Lunder applied for Disability Retirement benefits under the Plan. By letter dated August 7, 2003, the Division Human Resources Manager for Motion Control notified Lunder in writing that he was not eligible for Disability Retirement benefits. (See Exhibit D to Motion for Summary Judgment). This denial was based on §4.3(a) of the Plan, which expressly provides that Disability Retirement benefits are only available to a Participant whose

"employment…terminates…because of a Disability…"[2] Lunder's employment terminated because of the closure of the Ridgway facility, not as a result of any disability. Therefore, the Division Human Resources Manager determined that the applicable provisions of the Plan preclude Lunder's entitlement to Disability Retirement benefits. As discussed below, Lunder did not invoke the administrative process available under the Plan to have the denial of his claim reviewed by the Carlisle Corporation Pension and Insurance Committee. Instead, Lunder elected to file this action.

**b.    The Plan Documents**

The Plan is comprised of two documents. Part I, or the "master plan document," is the "Carlisle Corporation Retirement Plan for Hourly Paid Employees," as amended and restated effective January 1, 1997 ("Part I" or the "Carlisle Plan Document").[3] The "Part II Supplement," as amended and restated effective as of July 20, 2000 ("Part II" or the "Supplement"), supplements the Carlisle Plan Document with provisions specific to the Motion Control "Participating Group."[4] (See Exhibit A, pp. 2-3, §1.3 and Exhibit B, p.2, ¶(u), which describe the constituent parts of the Plan).

The Carlisle Plan Document governs various pension plans established by Carlisle Corporation and certain affiliates, including Motion Control. (Exhibit A, p.1, §1.1). The Part II Supplement describes "the benefits for Members who are in the employment of [Motion Control] in the Participating Group on and after July 20, 2000 and who retire or whose Vesting Service terminates on or after July 20, 2000."

---

[2]   Section 4.3 and the other relevant provisions of the Plan are discussed in detail below.

[3]   Motion Control was operated as a division of Carlisle Corporation.

[4]   The Carlisle Plan Document and the Supplement are attached to Defendants' Motion for Summary Judgment, respectively, as Exhibit A and Exhibit B.

### c. Eligibility for Disability Retirement Benefits

The Plan provides for four (4) types of retirement benefits: (1) Normal Retirement Benefits (Exhibit A, §4.1); (2) Early Retirement Benefits (Exhibit A, §4.2); (3) Disability Retirement Benefits (Exhibit A, §4.3); and (4) Deferred Vested Retirement Benefits (Exhibit A, §4.4).[5] Basic eligibility requirements for Disability Retirement Benefits are described in §4.3(a) of the Carlisle Plan Document. This provision states:

> **Eligibility**. If the employment of a Participant, but not an Inactive Participant, *terminates* (prior to retirement under section 4.1, 4.2 or 4.4) *because of a Disability* after he attains his Disability Retirement Age, he shall be eligible to receive a disability retirement benefit under the Plan in accordance with and subject to the provisions of the Plan.

(Exhibit A, p.17, §4.3(a)(emphasis supplied)).

The Plan defines the term "Disability" as "total and permanent disability, which is a medically determinable physical or mental impairment of a Participant resulting from a bodily injury, disease, or mental disorder which renders him incapable of engaging in any substantial gainful activity and which can be expected to result in death or to last at least 12 months; provided, however, that the Participant must be eligible for and actually receiving disability benefits under the Social Security Act for the period of time from his date of disability, after the waiting period required under the Social Security Act, until his Normal Retirement Age." (Exhibit A, p.5, §2.1(m)).

---

[5] Normal Retirement benefits are generally available when the participant's Vesting Service terminates on or after the participant reaches age 65. (Exhibit B, p.3, ¶(j)(1)). Early Retirement benefits are generally available to a participant who has five or more years of Vesting Service and attains age fifty (50). (Exhibit B, p.3, ¶(j)(2)). Deferred Vested Retirement Benefits are generally available to a participant whose Vesting Services terminates after he attains his Vested Retirement Age and before he reaches age 65. (Exhibit A, p.18, §4.4 (a)).

      **d.**      **Plan Provisions Describing the Discretion and Authority of the Benefits Committee**

The Plan vests discretion regarding interpretation of the Plan in a Committee known as the "Carlisle Corporation Pension and Insurance Committee," which is comprised of five members selected in accordance with procedures prescribed by the Plan. (Exhibit A, p.32, §§7.1-7.2). The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and a named fiduciary…". (Exhibit A, p.32, §7.3). The powers and duties of the Committee include "the *exclusive right, in its discretion*, to make *any finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan* or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision." (Exhibit A, p.32, §7.3)(d), (e)(emphasis supplied)).

In the event of a denial of a claim for benefits, the Plan provides a right of administrative review by the Committee. (Exhibit A, p.37, §7.9(c)). If a claimant files a written request for review of a denied claim, the Plan provides that the Committee shall review the claim within forth-five (45) days after the Committee's receipt of the request for review unless the Committee determines that special circumstances require an extension of time, in which case, this period may be extended for up to an additional forth-five (45) days. (Exhibit A, pp.37-38, §7.9(c)).

**III.    DISCUSSION**

      **a.    Lunder failed to exhaust his administrative remedies.**

This action is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  An ERISA beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan...."  29 U.S.C. § 1132(a)(1)(B).  However, "except in limited circumstances ... a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."  Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002), quoting Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir.1990) See also Wolf v. National Shopmen Pension Fund, 728 F.2d 182, 185 (3d Cir. 1984)); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); Sollon v. Ohio Casualty Ins. Co., 2005 WL 2768948 *24 (W.D. Pa. Oct. 25, 2005).  "[S]ound policy requires the application of the exhaustion doctrine in suits under [ERISA]."  Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.1980).  Courts require exhaustion of administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned."  Amato, 618 F.2d at 567.  Moreover, trustees of an ERISA plan "are granted broad fiduciary rights and responsibilities under ERISA ... and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes."  Id.; see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address

their complaints to the fiduciaries to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits.").

The rationale underlying the exhaustion requirement is particularly compelling in this case. Lunder's Complaint presents matters of Plan interpretation and issues of fact that are distinctly appropriate for administrative review. Yet, Lunder has not even attempted to present these matters to the Committee. The Plan specifically grants the Committee "the exclusive right and discretionary authority to control the management, operation, and administration of the Plan, as plan administrator and as named fiduciary…" (Exhibit A, p.32, §7.3). The powers and duties of the Committee include "the exclusive right, in its discretion, to make any *finding of fact* necessary or appropriate for any purpose under the Plan, including but not limited to the *determination of the eligibility* for and the amount of any benefit payable under the Plan," and "in its discretion, *to interpret the terms and provisions of the Plan* and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, *the right to remedy or resolve possible ambiguities, inconsistencies, or omissions*, by general rule or particular decision." (Exhibit A, p.32, §7.3)(d), (e)). Thus, the Plan grants to the Committee the broadest possible discretion regarding determinations of benefits and interpretation of the Plan.

Where, as here, the plan document grants discretion and authority to the plan administrator to interpret the plan and make factual determinations regarding benefit eligibility, the federal courts recognize and respect this discretion and authority by applying the arbitrary and capricious standard of review to such interpretations and determinations of fact. <u>Luby v. Teamsters Health, Welfare & Pension Trust Funds</u>, 944 F.2d 1176 (3d Cir. 1991). In the present case, Lunder seeks to circumvent the foregoing principles by having this Court take the first

crack at interpreting the various plan provisions implicated by his claim and by making findings of fact regarding his alleged disability and eligibility for benefits.  This approach is precluded by ERISA and well-established Third Circuit precedent.

It is also clear that no exception to the exhaustion requirement applies to Lunder's claim.  In Zipf, the Third Circuit distinguished between claims to enforce the terms of a benefit plan and claims to assert rights established by the ERISA statute.  799 F.2d at 891.  Exhaustion of Plan remedies is required in the former, but not the latter, category of cases.  Id.  Since Zipf, a vast majority of cases waiving the exhaustion requirement have fallen in two categories: (1) discrimination claims under section 510 of ERISA, or (2) failure to provide plaintiffs with Summary Plan Descriptions, as required by ERISA.  Harrow, 279 F.3d at 253.  More recently, the Third Circuit has also recognized the possibility of waiving exhaustion in cases where statutory rights stem from the fiduciary duties set forth in section 404 of ERISA, 29 U.S.C. § 1104(a).  See Harrow, 279 F.3d at 253-54.  In the present case, Lunder asserts only a routine claim for benefits under the Plan.  Such claims fall squarely within the scope of the exhaustion requirement, and the federal courts have uniformly held that exhaustion applies to such claims.

Defendants believe that Lunder may argue that the exhaustion requirement should be excused in this case based upon allegations of "futility."  The plaintiffs made this argument in a related case pending before the Honorable Sean J. McLaughlin, and the Court squarely rejected it.  That case was also initiated by former employees of Motion Control's Ridgway facility against the same defendants named by Lunder in this case.  In Larry Donachy, et al. vs. Motion Control Industries, et al., Civil Action No. 04-245, 2005 WL 3488714 (W.D.Pa., December 21, 2005), two former Motion Control employees filed an ERISA action on their own behalf and on behalf of other employees who were permanently laid off from the Ridgway facility, asserting

entitlement to retirement benefits a certain level under the Plan.  As in this case, the plaintiffs in the Donachy case did not submit their claim or proposed interpretation of the Plan to the Committee before filing suit.  After reviewing the relevant factors concerning the futility exception to ERISA's exhaustion requirement, Judge McLaughlin granted defendants' Motion for Summary Judgment based upon the plaintiffs' failure to exhaust their administrative remedies under the Plan.  A copy of Donachy vs. Motion Control Industries, Civil Action No. 04-245, 2005 WL 3488714 (W.D.Pa., December 21, 2005) is attached as Exhibit C to defendants' Motion for Summary Judgment.

No basis exists to justify a result in this case different from the holding in Donachy.  This case requires interpretation of the same Plan and the same administrative process that the Court addressed in the Donachy case.  This case also involves a claimant from the same group of employees whose employment ended with the closure of the Ridgway facility, the same defendants, and the same counsel as in the Donachy case.  Like the plaintiffs in Donachy, Lunder failed to exhaust his administrative remedies and, like the claim of the plaintiffs in Donachy, Lunder's claim also must be dismissed on this basis.

    **b.**    **The Plan must be interpreted according to its clear and unambiguous terms.**

ERISA is a comprehensive statute enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), and "to protect contractually defined benefits." Massachusetts Mutual Life Ins. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985); see also 29 U.S.C. §1001.  ERISA's framework ensures that employee benefit plans are governed by written documents, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits.  See Hozier v. Midwest

Fasteners, Inc., 908 F.2d 1155 (3d Cir.1990); Confer v. Custom Engineering Co., 952 F.2d 41 (3d Cir.1991); Hamilton v. Air Jamaica, Ltd., 945 F.2d 74 (3d Cir.1991), cert. denied, 503 U.S. 938, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992); 29 U.S.C. § 1022(a)(1).

Where the plan document is clear and unambiguous, it is to be interpreted according to its plain meaning. Walker v. Wal-Mart, Inc., 159 F.3d 938, 940-941 (5th Cir. 1998). Moreover, plan provisions are not to be regarded as ambiguous simply because their language is technical in nature. Id.

In the present case, Lunder contends that he is entitled to Disability Retirement benefits under the Plan. As discussed above, the Court should not reach this issue because Lunder failed to exhaust his administrative remedies, and the Plan vests in the Committee exclusive discretion and authority to decide claims and eligibility for benefits and to interpret the Plan. Nevertheless, even if the Court were to reach the merits of this dispute, Lunder's claim and his proposed interpretation of the Plan must be rejected because they are directly contrary to the terms of the Plan.

    c.    **Under the clear and unambiguous terms of the Plan, Lunder is not entitled to receive Disability Retirement Benefits because his employment did not terminate because of his disability.**

Section 4.2(a) of the Carlisle Plan Document makes clear that "Disability Retirement" benefits are available only where the Participant's "employment … terminates … because of a Disability." This clause is clear and unambiguous. The termination of the Participant's employment must have been the direct result of the Participant's disability. Lunder's employment terminated because of the closure of the facility and the permanent laying off of Lunder and his fellow employees. The plant closed on January 11, 2002, although Motion Control continued to pay Lunder and his fellow employees until March 16, 2002. Although

Lunder's Complaint alleges that he suffered a disabling injury in *1990*, Lunder's Complaint acknowledges that Lunder was an active employee of Motion Control until the closure of the Ridgway facility. (Complaint ¶12; Answer ¶12).

According to his Complaint, Lunder later applied for Social Security Disability Benefits and that, on May 27, 2003, more than eighteen (18) months after the closure of the Ridgway facility, the Social Security Administration determined that Lunder was totally and permanently disabled, and therefore, entitled to Social Security Disability insurance benefits retroactive to March 31, 2003. (Complaint ¶¶15-16).

Thus, according to Lunder's own Complaint, the determination of his eligibility for Social Security benefits and the effective date of those benefits did not occur until well in excess of a year after the closure of the plant and the termination of his employment. Based on these facts, Lunder simply cannot establish an entitlement to Disability Retirement Benefits under the clear and unambiguous terms of the Plan.[6]

### d.     Reservation of Phase 2 Issues and Discovery

On November 28, 2005, defendants issued interrogatories and a request for production of documents to Lunder and the other former employees of the Ridgway plant who have sued defendants for Disability Retirement benefits. Defendants' written discovery requests information and documents relevant to various issues in this case, including Lunder's allegations that Motion Control refused to provide him with a Benefits Application, the dates upon which he allegedly requested a Benefits Application, and the nature and date of onset of his alleged disability. A copy of defendants' interrogatories and request for production of documents is

---

[6]    Of course, Lunder's ineligibility for Disability Retirement benefits has no effect on any other retirement benefits which have accrued or will accrue to him under the Plan. See footnote 5, *supra*.

attached to defendants' Motion for Summary Judgment as Exhibit E. Defendants' interrogatories and request for production of documents remain outstanding based upon the parties' Court approved stipulation bifurcating factual issues from the threshold legal issues addressed in this Motion for Summary Judgment. For purposes of the parties' initial cross-motions for summary judgment only, defendants assume the accuracy of the dates and certain other factual allegations asserted in Lunder's Complaint. However, should this case survive phase 1 summary judgment under the current scheduling order, defendants reserve the right to challenge the factual allegations of Lunder's Complaint in phase 2 of the case.

## IV.  CONCLUSION

For the reasons discussed above, defendants respectfully request that the Court enter summary judgment in their favor and dismiss Lunder's Complaint. No genuine issue of material fact remains for trial and defendants are entitled to judgment as a matter of law.

By Court approved stipulation, the parties agreed to bifurcate certain legal issues in this case from more factually intensive issues. Under the parties' stipulation, the first phase of the litigation limited discovery and dispositive motions to threshold legal issues such as exhaustion of remedies and legal interpretation of key provisions of the Plan, such as §4.2. If the Court rules in favor of defendants on either of these issues, there would be no need to proceed to the second phase of the litigation. If the Court rules in favor of Lunder on both of these threshold issues, the case would proceed regarding factual issues such as the nature, timing and extent of Lunder's disability and whether the vesting and other prerequisites to benefits are satisfied in this case. Defendants respectfully submit that, based on the undisputed facts and controlling law, there is no need for the case to proceed to a second phase.

                                                    Respectfully submitted,

                                                    KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

DATE:  March 30, 2006                    By: Richard A. Lanzillo /s/
                                                  Richard A. Lanzillo
                                                  PA53811
                                                  120 West Tenth Street
                                                  Erie, PA  16501-1461
                                                  Telephone: (814) 459-2800
                                                  Fax: (814) 453-4530
                                                  Email:  rlanzill@kmgslaw.com

                                                  Attorneys for Defendants, Motion Control Industries, Division of Carlisle Corporation, Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation

# 664222